IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| NATHANIEL LEKAI HART, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. GLR-15-2054 |
| R. RODERICK, et al., | * | |
| Defendants. | * | |

**MEMORANDUM OPINION**

THIS MATTER is before the Court on Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (ECF No. 8).[1] Having considered the Motions and supporting documents, the Court finds no hearing necessary. See Local Rule 105.6 (D.Md. 2016). For the reasons stated below, the Court will grant Defendants' Motion.

**I.     BACKGROUND**

Plaintiff Nathaniel Lekai Hart is an inmate incarcerated at the North Branch Correctional Institution ("NBCI"). He alleges defendants R. Roderick, J. McMahan, "Prosper," "Mitchell," Bobby Shearin, NBCI, J. Reikie, J. and Franz, and C. Walker, violated his rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution.[2] Specifically, he alleges: 1) he was improperly held in a NBCI segregation unit for twenty days; and 2) he was

---

[1] Also pending before the Court are Defendants' Motion to Correct the Record (ECF No. 11), which the Court will grant, and Plaintiff Nathaniel Lekai Hart's Motion for Appointment of Counsel. Hart asks for appointment of counsel because he is indigent and has limited access to the prison law library. Hart has adequately articulated his claims. Further, he has demonstrated the ability to file oppositions to Defendants' motions, cite to case law to support his claims, and provided a declaration from a fellow inmate. (See ECF No. 12). Hart sets forth no extraordinary circumstance to warrant appointment of counsel. The Court will therefore, deny his Motion.

[2] Service was not obtained on "Prosper" and "Mitchell because the litigation coordinator at North Branch Correctional Institution ("NBCI") was unable to identify these individuals. For reasons that follow, even if service had been obtained on "Prosper" and "Mitchell," they would be entitled to dismissal or summary judgment.

twice classified as a maximum security inmate despite qualifying for a medium security designation or lower. On December 19, 2013, Hart was sanctioned with fifteen days of disciplinary segregation. Hart claims he remained in the segregation unit until January 23, 2014, twenty days longer than the time ordered. Additionally, Hart contends that on August 2, 2011 and July 31, 2012, NBCI staff refused to lower his security classification though he qualified for lower security status.

## II.   DISCUSSION

### A. Standard of Review

A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not state "a plausible claim for relief." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678 (citing Twombly, 550 U.S. at 555). Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of Am., N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd sub nom. Goss v. Bank of Am., NA, 546 F.App'x 165 (4th Cir. 2013).

Pro se pleadings, however, are liberally construed and held to a less stringent standard than pleadings drafted by lawyers. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citing Estelle v. Gamble, 429 U.S. 97, 106 (1976)); accord Brown v. N.C. Dep't of Corr., 612 F.3d 720, 722 (4th Cir. 2010). In considering a Rule 12(b)(6) motion, the court must construe the complaint in the light most favorable to the plaintiff, read the complaint as a whole, and take the facts asserted

therein as true. See Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 783 (4th Cir. 1999) (citing Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993)).

"When matters outside the pleading are presented to and not excluded by the court, the [12(b)(6)] motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 260–61 (4th Cir. 1998) (quoting Fed.R.Civ.P. 12(d)). Under Rule 56(a), the Court must grant summary judgment if the moving party demonstrates there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.

In reviewing a motion for summary judgment, the Court must draw all justifiable inferences in the non-moving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970)). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson, 477 U.S. at 247–48.

A "material fact" is one that might affect the outcome of a party's case. Id. at 248; see JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) (citing Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001)). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; accord Hooven-Lewis, 249 F.3d at 265.

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" Bouchat v. Balt. Ravens Football Club, Inc., 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed.R.Civ.P. 56(e)).  The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in [his] favor without weighing the evidence or assessing the witness' credibility." Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 644–45 (4th Cir. 2002).  The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." Bouchat, 346 F.3d at 526 (quoting Drewitt v. Pratt, 999 F.2d 774, 778–79 (4th Cir. 1993).

Defendants rely on exhibits attached to their Motion.  Because the Court will consider Defendants' exhibits, the Court must convert the Motion to Dismiss to a motion for summary judgment.[3]

**B. Analysis**

The parties dispute whether Hart has exhausted available administrative remedies. (ECF No. 1 at 2; ECF No. 11 at 6).  The Prisoner Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e (2012).  The PLRA's exhaustion provision requires inmates to pursue administrative grievances until they

---

[3] "[N]o formal notice of conversion by the district court is required in cases where it is apparent that what is nominally a Rule 12(b)(6) motion to dismiss is subject to conversion to a summary judgment motion—for example, where the motion is captioned in the alternative as a motion for summary judgment and affidavits are attached to the motion." Carter v. Balt. Cty., 39 F.App'x 930, 933 (4th Cir. 2002) (per curiam).

receive a final denial of the claims, appealing through all available stages in the administrative process. Chase v. Peay, 286 F.Supp.2d 523, 530 (D.Md. 2003), aff'd, 98 F.App'x 253 (4th Cir. 2004). Exhaustion is mandatory and the Court may not consider a claim that has not been exhausted. Ross v. Blake, 136 S. Ct. 1850, 1857 (2016); Jones v. Bock, 549 U.S. 199, 219–20 (2007).

Administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendants. See Jones, 549 U.S. at 215–16 (2007); Anderson v. XYZ Corr. Health Servs., Inc., 407 F.2d 674, 682 (4th Cir. 2005). Administrative remedies must, however, be available to the prisoner and this Court is "obligated to ensure that any defects in administrative exhaustion were not procured from the action or inaction of prison officials." Aquilar-Avellaveda v. Terrell, 478 F.3d 1223, 1225 (10th Cir. 2007).

An administrative procedure is unavailable when despite what regulations or guidance materials may promise it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates. Ross, 136 S.Ct. at 1859. Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." Id. The third circumstance arises when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 1860.

In Maryland, the administrative remedy process ("ARP") involves a three-step process. In order to show failure to exhaust, the defendant must demonstrate that the plaintiff failed to

appeal his grievance through all three steps in the administrative process. Filing a request for administrative remedy with the warden of the prison is the first of three steps in the ARP process. See Md.Code Regs. § 12.07.01.04 (2016). The ARP request must be filed within thirty days of the date on which the incident occurred, or within thirty days of the date the inmate first gained knowledge of the incident or injury giving rise to the complaint, whichever is later. Id. § 12.07.01.05A. If the request is denied, a prisoner has thirty calendar days to file an appeal with the Commissioner of Correction. Id. § 12.07.01.05C. If the appeal is denied, the prisoner has thirty days to file a grievance with the Inmate Grievance Office ("IGO"). See Md.Code Ann., Corr.Servs. §§ 10-206, 10-210 (West 2016); Regs. §§ 12.07.01.03, 12.07.01.05B.

Complaints are reviewed preliminarily by the IGO. See Corr.Servs. § 10-207; Regs. § 12.07.01.06A. If a complaint is determined to be "wholly lacking in merit on its face," the IGO may dismiss it without a hearing. Corr.Servs. § 10-207(b)(1); see Regs. § 12.07.01.07B. The order of dismissal constitutes the final decision of the Secretary of the Maryland Department of Public Safety and Correctional Services for purposes of judicial review. Corr.Servs. § 10-207(b)(2)(ii). The final agency determination is subject to judicial review in Maryland State court, so long as the claimant has exhausted his remedies. See id. § 10-210. But, an inmate need not seek judicial review in State court in order to satisfy the PLRA's administrative exhaustion requirement. See Md.Code Ann., Cts. & Jud.Proc. § 5-1003 (West 2016).

On January 2, 2014, Hart pleaded guilty before a hearing officer to disobeying an order and refusing to work, carry out an assignment, or accept a housing recommendation on December 19, 2013. (ECF No. 1-1). The hearing officer sanctioned Hart with fifteen days of disciplinary segregation for each offense, to be served concurrently. No good conduct credits were revoked. Because Hart had been in administrative segregation since December 19, 2013,

his disciplinary segregation was set to end on January 2, 2014. (Id.). On January 2, 2014, Hart was removed from disciplinary status and designated "unassigned status." He remained in the same housing unit, however, until January 23, 2014 when space became available to move him. (ECF No. 8-3).

Three months later, Hart filed an ARP complaining about on remaining on "lock-up" beyond the term of the disciplinary sanction. (ECF No. 8-4). On April 28, 2015, Hart filed ARP NBCI 0825-15, dated April 24, 2015, complaining about the additional twenty days. (Id.). In the ARP, Hart wrote, "[i]n accordance to [sic] DCD 185-002 my complaint must be submitted within 30 days that I first had acknowledgment of this incident." (Id.). Hart provided no explanation for the three-month delay in filing the ARP. As Hart appears to have recognized, ARPs must be submitted within thirty days of acknowledging the complained of incident. The Institutional ARP coordinator dismissed the ARP as untimely, and Hart appealed to the Commissioner of Correction on May 19, 2015. (Id.). The Commissioner upheld dismissal of the untimely ARP. (Id.).

Hart pursued the claims raised in ARP-NBCI-0825-15 to the IGO in IGO No. 20150972 filed on June 4, 2015. (ECF No. 8-5). On July 6, 2015, the IGO administratively dismissed the grievance for failure to properly exhaust the ARP process. There is no indication whether Hart filed for judicial review of the decision in the Circuit Court of Maryland. On July 13, 2015, Hart initiated this action. (ECF No. 1).

Hart filed a separate IGO complaining about his maximum security classification on May 18, 2015. The IGO dismissed the grievance, which was assigned IGO No. 20150869, on July 29, 2015 because Hart failed to provide within thirty days documentation required by Regs. §

12.07.01.04 (B)(9)(c). (ECF No. 8-5). There is no indication Hart sought judicial review of the determination in the Circuit Court of Maryland.

Hart alleges that he appealed his claims through every appropriate step of the ARP process and his complaints were dismissed. Hart filed a declaration executed by inmate Roger Ervin which states that, in the past, inmate appealed grievances do not receive responses. (ECF No. 12). Further, Ervin declares the NBCI regulations do not require or provide for further processing of an unanswered grievance appeal. Hart does not allege or declare, however, that he timely mailed or filed ARP-NBCI-0825-15or the supplemental paperwork required to proceed with IGO No. 20150869. Ervin's declaration attests only to past responses to inmate grievances. Of import, Ervin does not attest to having any personal knowledge of Hart's ARPs or IGO filings at issue, and his statement that NBCI regulations do not require or provide for further processing of unanswered grievance appeals does not apply to the facts of this case. In fact, the IGO answered Hart's IGO filings. The IGO determined one grievance was unexhausted and dismissed it. The IGO dismissed the second grievance after required documentation was not provided.

Most importantly, Hart does not claim the grievance process was unavailable to him. He does not claim that prison officials prevented him from exhausting his administrative remedies or otherwise rendered the remedy unavailable. Hart's record demonstrates that he was familiar with and sought to redress various concerns through the administrative remedy process. (See ECF 8-5) (stating Hart has filed 10 grievances with the IGO, two of which are pertinent here). Even when the facts are viewed in the light most favorable to Hart, the Court concludes that Hart failed to exhaust his administrative remedies by filing an untimely ARP and failing to provide the required documentation to the IGO. The Court will, therefore, grant Defendants' Motion.

### III.   CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (ECF No. 8) and Motion to Correct the Record (ECF No. 11) are GRANTED.  Hart's Motion for Appointment of Counsel (ECF No. 13) is DENIED. Defendants' Motion to Dismiss (ECF No. 15) is DENIED as moot.  A separate Order follows.

Entered this 21st day of July, 2016

/s/
_____
George L. Russell, III
United States District Judge